UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MEHLER TEXNOLOGIES, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 3:09-cv-0655-M |
| § | |
| MONOLITHIC CONSTRUCTORS, INC., § | |
| MONOLITHIC HOLDINGS, INC., § | |
| and MONOLITHIC, INC., § | |
| § | |
| Defendants. § | |

### MEMORANDUM OPINION AND ORDER

Before the Court are: (1) Plaintiff's Motion to Strike Defendants' Affirmative Defenses [Docket Entry #9]; (2) Plaintiff's Motions to Dismiss Defendants' Counterclaims and for Partial Judgment on the Pleadings [Docket Entry #7]; and (3) Defendants' Motions to Amend Pleadings [Docket Entries #14 and #15]. For the reasons explained below, Plaintiff's Motion to Strike is **DENIED**, Plaintiff's Motion to Dismiss is **GRANTED** with leave to amend, Plaintiff's Motion for Partial Judgment on the Pleadings is **DENIED**, and Defendants' Motions to Amend are **DENIED** as moot.

### BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Mehler Texnologies Inc. ("Mehler") manufactures and distributes coated fabric used in the creation of a wide variety of industrial and consumer products. Defendants (collectively, "Monolithic") make domes that are used to construct buildings. Monolithic uses coated fabric to construct its domes, and has used Mehler as its supplier of coated fabric for a number of years.

From May 20, 2008, to December 12, 2008, Monolithic placed fourteen orders for coated fabric with Mehler. Mehler timely delivered to Monolithic all the coated fabric ordered, and issued invoices clearly stating a payment term of 30 days. Starting in June 2008, Monolithic failed to pay Mehler's invoices. In November 2008, Mehler informed Monolithic that payments were overdue and that a payment plan must be established for Monolithic's account to be paid and brought current. Monolithic submitted its payment plan on December 5, 2008, and made two payments under that plan. Monolithic failed to make any further payments, despite repeated demands from Mehler that Monolithic pay its account balance or resume making payments on the payment plan.

On April 8, 2009, Mehler sued Monolithic to recover the outstanding account balance. Monolithic answered on May 7, 2009, raising various affirmative defenses and asserting permissive counterclaims related to a separate transaction between Monolithic and Mehler.

In its counterclaims, Monolithic alleges that Mehler supplied defective gold-colored fabric, which Monolithic used to build components for two church domes in Dothan, Alabama. Specifically, Monolithic alleges that Mehler changed the formula for the manufacture of the fabric, resulting in its unsuitability for use in Monolithic domes, and in variances in the color of the fabric. Monolithic seeks damages for past and future costs stemming from the problems with the Dothan domes, and reimbursement for the stock of gold fabric in its inventory that it is unable to use.

On June 1, 2009, Mehler filed motions to: (1) strike Monolithic's affirmative defenses, complaining under Rules 9(b), 12(b)(6) and 12(f) that the defenses were neither sufficiently specific nor plausible; (2) dismiss Monolithic's counterclaims; and (3) for partial judgment on the pleadings. Monolithic responded on June 29, 2009, and moved in the alternative for leave to

amend its affirmative defenses and counterclaims.

## ANALYSIS

I.  Plaintiff's Motion to Strike, Plaintiff's Motion for Judgment on the Pleadings, and Defendants' Motion for Leave to Amend Affirmative Defenses

Pursuant to the Court's Scheduling Order, no party is required to file a motion for leave to amend its pleadings so long as the amended pleadings are filed by November 25, 2009. Defendants' Motion for Leave to Amend Affirmative Defenses is therefore **DENIED** as moot. Defendants may amend their pleadings by right, and Plaintiff's Motions to Strike and for Partial Judgment on the Pleadings are therefore **DENIED**, without prejudice to refiling after Defendants submit any amended pleadings. In doing so, Defendants will be mindful of the need to plead fraud with specificity, and to satisfy the requirement of *Bell Atlantic Corp. v. Twombly*[1] and *Ashcroft v. Iqbal*.[2]

II. Plaintiff's 12(b)(1) Motion to Dismiss

Mehler moves to dismiss Monolithic's counterclaims, insofar as they relate to future damages in connection with the Dothan domes, under Federal Rule of Civil Procedure 12(b)(1), and alternatively, under Rule 12(b)(7). Because the Court finds that it does not have subject matter jurisdiction over those Dothan claims, it does not reach the alternative Rule 12(b)(7) argument.

Jurisdiction under Article III of the United States Constitution requires that a dispute "demonstrate sufficient ripeness to establish a concrete case or controversy."[3] This is a threshold

---

[1] 550 U.S. 544 (2007).
[2] 129 S. Ct. 1937 (2009).
[3] *See* U.S. CONST. art. III, § 2; *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 579 (1985); *Halder v. Standard Oil Co.*, 642 F.2d 107, 110 (5th Cir. 1981) ("It is fundamental that the federal courts do not decide abstract, hypothetical, or contingent questions." (citing *Alabama State Fed'n of Labor v. McAdory*, 325 U.S. 450, 461 (1945))).

matter that must be decided before addressing the merits of any claims.[4] In deciding whether a case is ripe, a court looks primarily to two considerations: "the fitness of the issues for judicial decision," and "the hardship to the parties of withholding court consideration."[5] Monolithic, as the party invoking jurisdiction over its counterclaims, bears the burden of establishing subject matter jurisdiction.[6]

Accepting as true all material allegations in Monolithic's counterclaim, and construing the counterclaim in favor of Monolithic, the Court finds that Monolithic seeks three categories of damages: (1) damages incurred on the Dothan project; (2) contingent, hypothetical future damages that Monolithic may incur in connection with the Dothan domes; and (3) damages for the stock of gold fabric that Monolithic alleges to be unfit for use.

Any claims related to the second category of damages are not ripe for adjudication. The future damages are contingent on future events—presumably damage to the domes for which the Dothan church may seek compensation from Monolithic—which may not occur as anticipated, or may not occur at all.[7] Nor does Monolithic allege that it would suffer hardship as a result of withholding court consideration.[8] The Court finds that it currently lacks jurisdiction to hear any claims for contingent future damages Monolithic may incur in connection with the Dothan domes. Monolithic's counterclaims, to the extent they seek damages for this second category, are therefore dismissed, without prejudice to amendment if and when such damages become actual and concrete before trial.

---

[4] *See Thomas*, 473 U.S. at 579.
[5] *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967).
[6] *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted).
[7] *See Zepeda v. Boerne Indep. Sch. Dist.*, 294 F. App'x 834, 838 (5th Cir. 2008) ("If the purported injury is contingent [on] future events that may not occur as anticipated, or indeed may not occur at all, the claim is not ripe for adjudication." (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985)) (internal quotation marks omitted)).
[8] *See id.* ("It is fundamental, however, that even where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness." (quoting *Central & South West Servs. v. EPA*, 220 F.3d 683, 690 (5th Cir. 2000)) (internal quotation marks omitted)).

III. 12(b)(6) Motion to Dismiss

A. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*[9] and reaffirmed in *Ashcroft v. Iqbal*,[10] the pleading standard Rule 8 announces does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support.[11] While a court must accept all of the plaintiff's allegations as true, it is not bound to accept as true "a legal conclusion couched as a factual allegation."[12] A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do.[13] To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.[14] A claim has facial plausibility when the court can draw a reasonable inference from the pleadings that the defendant is liable for the misconduct alleged.[15] Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the pleader is plausibly entitled to relief.[16]

B. Breach of Contract

Monolithic alleges that Mehler failed to provide gold-colored coated fabric in accordance with the express and implied terms of the contract between the parties.

Contracts relating to the sale of goods are governed by Article 2 of the UCC, adopted in

---

[9] 550 U.S. 544 (2007).
[10] 129 S. Ct. 1937 (2009).
[11] *Id.* at 1949 (citations omitted).
[12] *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 555).
[13] *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[14] *Id.* at 570.
[15] *See Twombly*, 550 U.S. at 556.
[16] Fed. Rule Civ. P. 8(a)(2); *Iqbal*, 129 S. Ct. at 1950.

Texas as Chapter 2 of the Business and Commerce Code.[17] Breach of contract and breach of warranty are separate causes of action under the UCC.[18] The remedies for breach of contract are set forth in section 2.711, and are available to a buyer "[w]here the seller fails to make delivery."[19] The remedies for breach of warranty, however, are set forth in section 2.714, and are available to a buyer who has accepted goods, but discovers that the goods are defective in some manner.[20] Once a buyer has accepted the goods and can no longer revoke that acceptance, he is limited to recovering under section 2.714 of the UCC for breach of warranty if the goods are defective or nonconforming.[21]

Having used the gold fabric on its Dothan domes in 2007, Monolithic clearly accepted the goods from Mehler. Therefore, Monolithic has no claim for breach of contract under Texas law, and its breach of contract claim is dismissed with prejudice.

C. Violation of the Texas Deceptive Trade Practices Act (DTPA)

Monolithic's DTPA counterclaim does not contain sufficient factual matter to state a facially plausible claim to relief. Monolithic asserts that Mehler violated Sections 17.46(b)(5) and (7) of the Texas Business and Commerce Code, and thereby the DTPA, by representing that the gold fabric would be fit for the purpose of constructing the Dothan domes, and that the colors ordered from batch to batch would not be modified.[22] Texas Business and Commerce Code §§ 17.46(b)(5) and (7) prohibit "false, misleading, or deceptive acts or practices includ[ing] . . .

---

[17] Tex. Bus. & Com. Code Ann. § 2.102 (Vernon 1994); *see Emerson Elec. Co. v. Am. Permanent Ware Co.*, 201 S.W.3d 301, 310 (Tex. App.—Dallas 2006, no pet.).
[18] *See Sw. Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 576 (Tex. 1991).
[19] Tex. Bus. & Com. Code § 2.711(a).
[20] *See* Tex. Bus. & Com. Code §§ 2.714, 2.711 at comment 1.
[21] *See Brooks, Tarlton, Gilbert, Douglas & Kressler v. U.S. Fire Ins. Co.*, 832 F.2d 1358, 1374-75 (5th Cir. 1987); *Leggett & Platt, Inc. v. Yankee Candle Co.*, 2008 WL 723582, at *5 (N.D. Tex. Mar. 18, 2008) (Means, J.) (citations omitted); *Sw. Bell*, 811 S.W.2d at 576.
[22] *See* Monolithic's Answer and Counterclaim at 9-10; Tex. Bus. & Com. Code Ann. § 17.50(a)(1) (Vernon 1994) ("A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish: the use or employment by any person of a false, misleading, or deceptive act or practice that is specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter; and relied on by a consumer to the consumer's detriment . . . .").

representing that goods or services have . . . characteristics, ingredients, uses, benefits, or quantities which they do not have or . . . representing that goods or services are of a particular standard, quality, or grade . . . if they are of another."[23] Without an allegation of any specific representation, either oral or written, from Mehler to Monolithic regarding the fabric at issue, the Court cannot reasonably infer from Monolithic's pleadings that Mehler is liable for the alleged misconduct.[24] Monolithic may amend its counterclaim to state a violation of the DTPA, including that representations were made or that the representations were implied.

D.   Breach of Warranty

Monolithic argues that Mehler breached the implied warranty of fitness for a particular purpose in violation of Texas Business & Commerce Code § 2.315. However, Monolithic's breach of warranty counterclaim does not contain sufficient factual matter to state a facially plausible claim to relief because it fails to allege certain necessary elements of such a claim under Texas law.

First, Monolithic does not allege any specific facts to support its rote recitation that it relied on Mehler's skill or judgment in purchasing the gold-colored fabric from Mehler.[25] Second, Monolithic does not allege that it notified Mehler of the breach.[26] Third, Monolithic does not allege that the fabric was to be used for some purpose different than the fabric's ordinary purpose.[27] While it may be difficult to determine the "ordinary uses" of an intermediate

---

[23] *Id.*

[24] *See Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 502 (Tex. 2001) ("Actionable representations may be oral or written.") (citation omitted).

[25] *See* Tex. Bus. & Com. Code Ann. § 2.315 (Vernon 1994).

[26] *See* Tex. Bus. & Com. Code Ann. § 2.607(c)(1) (Vernon 1994) ("Where a tender has been accepted the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy . . . ."); *Ketter v. ESC Med. Sys.*, 169 S.W.3d 791, 799 (Tex. App.—Dallas 2004, n.w.h.) (applying the requirements of Texas Business and Commerce Code § 2.607(c)(1) to claims for breach of express warranty and breach of implied warranty of fitness for a particular purpose).

[27] *See* Tex. Bus. & Com. Code Ann. § 2.315 (Vernon 1994); *Strauss v. Ford Motor Co.*, 439 F. Supp. 2d 680, 686 (N.D. Tex. 2006) (Fish, J.) ("Texas courts hold that to maintain an action for breach of the implied warranty of

product that is manufactured for use in the creation of other, final products, the pleadings seem to indicate that the building of domes was one of the "ordinary uses" of Monolithic's coated fabric. According to its Counterclaim, Monolithic has been building domes since 1970, and Mehler has been one of the major suppliers of the coated fabric used by Monolithic to construct these domes.[28] Mehler states that its coated fabric is used to create a variety of products, including "membranes for tensile structures and tents."[29] Monolithic has not presented any argument that the construction of its domes is a non-ordinary use of Mehler's coated fabric.

Because all three of the missing or insufficiently stated allegations are necessary elements of a claim under Texas law for breach of implied warranty of fitness for a particular purpose, Monolithic has failed to allege a plausible claim.[30] Monolithic may amend its counterclaim to state the elements of a breach of implied warranty.

E.      Negligent Misrepresentation

Mehler asserts that the "economic loss" doctrine applied by Texas courts precludes Monolithic's negligent misrepresentation claim against Mehler. The Texas Supreme Court has held that "[w]hen the injury is only the economic loss to the subject of the contract itself the action sounds in contract alone."[31] While a breach of implied warranty action has been called "a freak hybrid born of the illicit intercourse of tort and contract,"[32] the Texas Supreme Court

---

fitness for a particular purpose, the plaintiff must allege that the product was to be used for some purpose different than the product's ordinary purpose. . . . In addition, the comment to § 2.315 provides that a particular purpose 'envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability.'" (citations omitted)).

[28] *See* Monolithic's Answer and Counterclaim at 7.
[29] *See* Mehler's Complaint at 3.
[30] *See* Tex. Bus. & Com. Code § 2.315; *Nobility Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77, 82-83 (Tex. 1977).
[31] *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494-95 (Tex. 1991) (quoting *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)). This rule has also been followed by federal district courts in Texas applying state law. *See, e.g., Worldpak Int'l, LLC v. Diablo Valley Packaging, Inc.*, 2009 U.S. Dist. LEXIS 47874, at *5 (E.D. Tex. June 4, 2009); *Clems Ye Olde Homestead Farms Ltd. v. Briscoe*, 2008 U.S. Dist. LEXIS 98845, at *20-21 (E.D. Tex. Dec. 8, 2008).
[32] William L. Prosser, *The Assault Upon the Citadel (Strict Liability to the Consumer)*, 69 Yale L.J. 1099, 1126 (1960).

has held that when the implied warranty provisions of the Texas and Business Commerce Code apply to a given transaction, the economic loss rule governs the recoverable damages.[33] The application of the economic loss rule thus generally precludes plaintiffs from recovering in tort for economic losses resulting from a defective product.[34]

Monolithic's counterclaim seeks damages for costs already incurred in relation to the Dothan domes, and for the benefit of its bargain for its inventory of gold fabric. This latter category of damages relating to the allegedly deficient gold fabric is a direct economic loss and the very subject of its sale of goods contract with Monolithic. Recovery on a negligent misrepresentation theory is thus precluded by the economic loss rule.[35]

As for damages already incurred in relation to the Dothan domes, these are separate from Monolithic's contract with Mehler and are therefore not subject to the economic loss rule. However, Monolithic's counterclaim is not pled with enough factual specificity to state a facially plausible claim for relief. For example, Monolithic does not allege any specific affirmative act of supplying false information, which is a necessary element of a claim under Texas law for negligent misrepresentation.[36] A recitation of the elements of a claim will not suffice. Monolithic may amend its counterclaim to state the elements and supporting facts of a negligent misrepresentation.

---

[33] *See, e.g., Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867 (Tex. 2007) ("[D]efective product remedies are adequately provided for in tort through application of section 402A of the Restatement (Second) of Torts and in contract by the implied warranty provisions of the Texas Business and Commerce Code. . . . When the Business and Commerce Code and its warranty provisions apply, the economic loss rule measures the damages recoverable."); *Nobility Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77, 79-80 (Tex. 1977) ((adopting the "economic loss" rule in holding that a purchaser of a defective mobile home could not recover on a strict liability tort theory in a claim based on a breach of the implied warranties of merchantability and fitness for a particular purpose).
[34] *See Hininger v. Case Corp.*, 23 F.3d 124, 126 (5th Cir. 1994) (citing *Nobility Homes*, 557 S.W.2d 77).
[35] *See D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663-64 (Tex. 1998) (citing Restatement (Second) of Torts § 552B (1977)) (holding that plaintiff's negligent misrepresentation claim failed for lack of any independent injury).
[36] *See Fed.Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (adopting the tort of negligent misrepresentation as described in Restatement (Second) of Torts § 552)).

## CONCLUSION

For the reasons explained above, Plaintiff's Motions to Strike and for Partial Judgment on the Pleadings are **DENIED** without prejudice to refiling. Plaintiff's Motion to Dismiss Defendants' Counterclaims is **GRANTED**. Defendants' Motions to Amend are **DENIED** as moot. Defendants may amend their pleadings to re-state their affirmative defenses and those counterclaims not dismissed with prejudice in accordance with the Court's Scheduling Order.

**SO ORDERED.**

September 29, 2009.

_____
**BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS**