**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| MEHLER TEXNOLOGIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:09-CV-655-M |
| | § | |
| MONOLITHIC CONSTRUCTORS, INC., | § | |
| MONOLITHIC HOLDINGS, INC., | § | |
| and MONOLITHIC, INC., | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are: (1) Plaintiff's Motion to Dismiss Defendants' Amended
Counterclaim [Docket Entry #24]; (2) Plaintiff's Motion to Strike Defendants' Affirmative
Defenses [Docket Entry #35]; and (3) Plaintiff's Motion for Partial Judgment on the Pleadings
[Docket Entry #26].  For the reasons explained below, the Motion to Dismiss is **DENIED**, the
Motion to Strike is **GRANTED**, and the Motion for Partial Judgment is **GRANTED**.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Mehler Texnologies Inc. ("Mehler") manufactures and distributes coated fabric
used in the creation of a wide variety of industrial and consumer products.  Defendants
(collectively, "Monolithic") make domes that are used to construct buildings.  Monolithic uses
coated fabric to construct its domes, and has used Mehler as its supplier of coated fabric for a
number of years.

From May 20, 2008, to December 12, 2008, Monolithic placed with Mehler fourteen
orders for coated fabric.  Mehler timely delivered to Monolithic all the coated fabric ordered, and

issued invoices clearly stating a payment term of 30 days.  Starting in June 2008, Monolithic failed to pay Mehler's invoices.  In November 2008, Mehler informed Monolithic that payments were overdue and that a payment plan must be established for Monolithic's account to be paid and brought current.  Monolithic submitted its payment plan on December 5, 2008, and made two payments under that plan.  Monolithic failed to make any further payments, despite repeated demands from Mehler that Monolithic pay its account balance or resume making payments on the payment plan.

On April 8, 2009, Mehler sued Monolithic to recover the outstanding account balance. Monolithic's answer raised various affirmative defenses and asserted permissive counterclaims based on an unrelated transaction between the parties.  On September 29, 2009, the Court granted Mehler's Motion to Dismiss Monolithic's counterclaims with leave to replead.

Monolithic alleges in its Amended Counterclaim of November 24, 2009 [Docket Entry #23] that Mehler supplied defective gold and copper colored fabric, which Monolithic used, respectively, to build components for two church domes in Dothan, Alabama (the "Dothan domes") and a dome in McMinnville, Tennessee (the "McMinville dome") that are now experiencing major problems.  Specifically, Monolithic alleges that Mehler changed the formula for the manufacture of these fabrics, which resulted in separated seams and in the fabrics' shrinkage, delamination and discoloration. Monolithic seeks damages for past and future costs stemming from the problems with the Dothan and McMinville domes.

Mehler now moves: (1) to dismiss Monolithic's amended counterclaims for failure to state a claim; (2) to strike Monolithic's affirmative defenses in its original Answer; and (3) for partial judgment on the pleadings as to its own claims.

## ANALYSIS

I.      Motion to Dismiss Counterclaims

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  This standard does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support.[1]  While a court must accept all of the plaintiff's allegations as true, it is not bound to accept as true "a legal conclusion couched as a factual allegation."[2]  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do.[3]  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.[4]  A claim has facial plausibility when the court can draw a reasonable inference from the pleadings that the defendant is liable for the misconduct alleged.[5]  Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the pleader is plausibly entitled to relief.[6]

A.  Violation of the Texas Deceptive Trade Practices Act (DTPA)

Texas Business and Commerce Code §§ 17.46(a), (b)(5) and (b)(7) prohibit "[f]alse, misleading, or deceptive acts or practices," including "representing that goods or services have . . . characteristics, ingredients, uses, benefits, or quantities which they do not have or . . . representing that goods or services are of a particular standard, quality, or grade . . . if they are of another."[7]  Monolithic asserts that Mehler violated these sections of the Code, and thereby the

---

[1] *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citations omitted).
[2] *Id.* at 1949-50 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[3] *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[4] *Id.* at 570.
[5] *See Twombly*, 550 U.S. at 556.
[6] Fed. Rule Civ. P. 8(a)(2); *Iqbal*, 129 S. Ct. at 1950.
[7] *Id.* (Vernon 2007).

DTPA, by representing that: (1) the fabric coating it has sold to Monolithic is fit for Monolithic's construction purposes, and more specifically, that the fabric would be suitable for the welding required to create the dome shape for Monolithic's products and that the colors ordered from batch to batch would not be modified;[8] (2) that the seams in the fabric would not come undone after the buildings were completed;[9] (3) that the fabric would resist heat up to 70 degrees Celsius, or 158 degrees Fahrenheit;[10] (4) that the fabric could be welded without grinding and with common welding equipment;[11] and (5) that the new formula for its gold and copper colored fabrics resulted in better heat resistance and less delamination than the previously used formula.[12]

Mehler contends that those representations were not alleged to have been specifically made with regard to the precise bolts of fabrics that were used in the Dothan and McMinville domes, and that therefore Monolithic has failed to state a claim under the DTPA. This argument holds Monolithic to a standard that Rule 8(a)(2) does not contemplate. Monolithic has sufficiently alleged specific representations, both oral and written, made by Mehler with regard to the fabrics that were used in the Dothan and McMinville domes, among other projects, such that the Court can reasonably infer from Monolithic's pleadings that Mehler is liable for the alleged misconduct. The Motion to Dismiss Monolithic's DTPA counterclaim is therefore DENIED.

B. Breach of Implied Warranty

Monolithic argues that Mehler breached the implied warranty of fitness for a particular purpose in violation of Texas Business & Commerce Code § 2.315. Monolithic alleges in

---

[8] *See* Monolithic's Amended Counterclaim at ¶10.
[9] *See id.* at ¶11.
[10] *See id.* at ¶13.
[11] *See id.* at ¶14.
[12] *See id.* at ¶16.

support of this claim that there was regular communication between Monolithic and Mehler regarding the domes constructed by Monolithic using the fabrics purchased from Mehler, and that Monolithic relied on Mehler's skill or judgment to advise Monolithic if there was any reason known to Mehler why the use of its fabrics would not be appropriate for buildings with the specifications that would be constructed with Monolithic's domes.[13]  Second, Monolithic alleges that the construction of Monolithic domes was not the ordinary purpose of the fabrics purchased from Mehler, such fabric "having not been designed/engineered and/or manufactured for . . . use in the construction of [Monolithic's] dome buildings."[14]  Third, Monolithic alleges that it gave Mehler reasonable notice of the failure of the fabric on the Dothan and McMinville domes.[15]

Monolithic has sufficiently alleged all necessary elements of a claim under Texas law for breach of implied warranty of fitness for a particular purpose,[16] and therefore the Motion to Dismiss is DENIED as to the counterclaim for implied breach of warranty.

### C. Negligent Misrepresentation

Monolithic uses the same specific representations allegedly made by Mehler and discussed in its DTPA counterclaim, above, to support its claim that Mehler provided false

---

[13] *See id.* at ¶9.

[14] *See id.* at ¶8; Tex. Bus. & Com. Code Ann. § 2.315 (Vernon 1994); *Strauss v. Ford Motor Co.*, 439 F. Supp. 2d 680, 686 (N.D. Tex. 2006) (Fish, J.) ("Texas courts hold that to maintain an action for breach of the implied warranty of fitness for a particular purpose, the plaintiff must allege that the product was to be used for some purpose different than the product's ordinary purpose. . . . In addition, the comment to § 2.315 provides that a particular purpose 'envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability.'" (citations omitted)).

[15] *See* Monolithic's Amended Counterclaim at ¶¶ 21, 26; Tex. Bus. & Com. Code Ann. § 2.607(c)(1) (Vernon 1994) ("Where a tender has been accepted the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy . . . ."); *Ketter v. ESC Med. Sys.*, 169 S.W.3d 791, 799 (Tex. App.—Dallas 2004, n.w.h.) (applying the requirements of Texas Business and Commerce Code § 2.607(c)(1) to claims for breach of express warranty and breach of implied warranty of fitness for a particular purpose).

[16] *See* Tex. Bus. & Com. Code § 2.315 (Vernon 1994); *Nobility Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77, 82-83 (Tex. 1977).

information to Monolithic in connection with its dome construction business.[17]

Mehler again contends that those representations were not alleged to have been specifically made with regard to the Dothan and McMinville domes, and that therefore Monolithic has failed to state a claim for negligent misrepresentation.  This argument is no more persuasive here than in the context of Monolithic's DTPA claim.  Monolithic has sufficiently alleged specific provisions of false information by Mehler with regard to the general set of transactions between Monolithic and Mehler, such that the Court can reasonably infer from Monolithic's pleadings that Mehler is liable for the alleged misconduct with regard to the Dothan and McMinville domes.[18]  The Motion to Dismiss is therefore DENIED as to the counterclaim for negligent misrepresentation.

II.      Motion to Strike Affirmative Defenses

A court may strike from a pleading any insufficient defense.[19]  While motions to strike are generally disfavored, the Court has discretion to strike an affirmative defense if it is insufficient as a matter of law.[20]

Monolithic's "affirmative defenses" of unclean hands, offset, estoppel and fraud are not in the nature of affirmative defenses because they do not relate to the subject matter of Mehler's original claim.[21]  An affirmative defense establishes an independent reason why the plaintiff

---

[17] *See Fed.Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (adopting the tort of negligent misrepresentation as described in Restatement (Second) of Torts § 552).

[18] *See Compass Bank v. King, Griffin & Adamson, P.C.*, 2003 WL 22077721 (N.D. Tex. 2003) (Godbey, J.), *aff'd*, 388 F.3d 504 (5th Cir. 2004).

[19] Fed. R. Civ. P. 12(f).

[20] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105 (1983).

[21] *See, e.g., Capital Concepts Props. v. Mutual First, Inc.*, 35 F.3d 170, 175 (5th Cir. 1994) (interpreting Texas law) ("Setoff is a form of equitable counterclaim which brings together obligations of parties opposing each other and, by judicial action, makes each obligation extinguish the other. . . . In order for one demand to be set off against another, both demands must mutually exist between the same parties" (citing 67 Tex. Jur. 3d § 3 (1989); *Dallas/Fort Worth Airport Bank v. Dallas Bank & Trust Co.*, 667 S.W.2d 572, 575 (Tex. App.—Dallas 1984, no writ))) (internal quotation marks omitted); *Cosden Oil & Chem. Co. v. Karl O. Helm Aktiengesellschaft*, 763 F.2d 1064, 1074 (5th Cir. 1984) (stating that, where a jury found that four separate orders comprised a single contract, a buyer was

should not recover on its original asserted claim.[22] If Monolithic proved and was awarded damages on these "affirmative defenses," which relate to its counterclaims against Mehler, it would not negate Mehler's right to recover on its original cause of action. Mehler's Motion to Strike Monolithic's affirmative defenses is therefore GRANTED. Monolithic may amend its pleading to assert these causes of action as counterclaims.

III.   Motion for Partial Judgment on the Pleadings

Judgment on the pleadings under Rule 12(c) is proper "to dispose of cases where the material facts are not in dispute and judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."[23] In analyzing a motion for judgment on the pleadings under Rule 12(c), a court uses the same standard as a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6).[24]

In its Answer, Monolithic admits that it purchased material from Mehler on fourteen occasions from May 20, 2008 to December 12, 2008, and that Mehler sent invoices for each contract stating that payment was due in 30 days;[25] that Mehler timely delivered the goods;[26]

---

entitled to offset damages on that single contract); *Microsoft Corp. v. Worth*, 2007 WL 1975574, at *2 (N.D. Tex. July 5, 2007) (Fish, J.) (citing *OKC Corp. v. Williams*, 461 F. Supp. 540, 550 (N.D. Tex. 1978) (Higginbotham, J.)) (holding that a court should not strike any portion of a pleading unless, *inter alia*, "there is no possible relation between the challenged portion of the pleading and the underlying controversy," and going on to specifically hold that the defense of unclean hands is available "only when the plaintiff's misconduct is directly related to the merits of the controversy between the parties."); *Principal Life Ins. Co. v. Renaissance Healthcare Sys., Inc.*, Case No. 06-2973, 2007 WL 3228103, at *2 n.1 (S.D. Tex. Oct. 30, 2007) ("An offset is an equitable counterclaim, not an affirmative defense." ) (citation and internal quotation marks omitted); *Bright & Co. v. Holbein Family Mineral Trust*, 995 S.W.2d 742, 747 (Tex. App.—San Antonio 1999, pet. denied) (holding that defendant's overpayments of royalties in one period did not negate plaintiff's claim for nonpayment of royalties in another period, and thus amounted to a counterclaim, rather than an affirmative defense of offset); *but see BarclaysAmerican/Business Credit, Inc. v. E&E Enterprises, Inc.*, 697 S.W.2d 694 (Tex. App.—Dallas 1985, no writ) (allowing a buyer to assert an offset defense against a seller's UCC breach of contract claim because, while the buyer breached with respect to the first and second shipment of goods, the seller breached an overarching contract governing all transactions between the parties with respect to the third and fourth shipment of goods).
[22] *Aviation Composite Techs., Inc. v. CLB Corp.*, 131 S.W.3d 181, 189 (Tex. App.—Fort Worth 2004, no pet. h.) (citing *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 212 (Tex. 1996)).
[23] *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (citations omitted).
[24] *See Doe v. MySpace Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)).
[25] *See* Monolithic's Answer at ¶ 12.

that in response to Mehler's notification that payments were overdue, it submitted a payment plan to Mehler on December 5, 2008, setting forth a payment plan;[27] that it made the first two payments consistent with the payment plan, but failed to make any further payments;[28] that it has failed to make the rest of the payments despite demand;[29] and that it has an outstanding balance on its account with Mehler of $336,269.93.[30]

These facts establish that Monolithic accepted the goods but failed to pay for them, and the Court thus concludes that Monolithic is liable to Mehler for actual damages in the sum of $336,269.93 under Tex. Bus. & Com. Code § 2.709.  Mehler's Motion for Partial Judgment on the Pleadings is therefore GRANTED.

## CONCLUSION

For the reasons explained above, Plaintiff's Motion to Dismiss Defendants' Counterclaims is **DENIED** and Plaintiff's Motions to Strike and for Partial Judgment on the Pleadings are **GRANTED**.


SO ORDERED.

March 11, 2010.


BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

---

[26] *See id.* at ¶ 13.
[27] *See id.* at ¶ 15.
[28] *See id.*
[29] *See id.* at ¶ 16.
[30] *See id.* at ¶ 17.